ROMANCES CRAWFORD *v.* COMMISSIONER
OF CORRECTION
(SC 17882)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued September 6, 2007—officially released February 26, 2008

*Paul R. Kraus*, special public defender, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia Serafini*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ZARELLA, J. The petitioner, Romances Crawford, appeals following the denial of his petition for certifica-

tion to appeal from the judgment of the habeas court denying his pro se petition for a writ of habeas corpus. The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and his habeas petition seeking to withdraw his guilty plea under the *Alford* doctrine[1] on the ground that his trial counsel had provided him with ineffective assistance of counsel. The petitioner also claims that the habeas court abused its discretion in denying certification to appeal with respect to the petitioner's claim that the habeas court improperly had excluded evidence concerning compliance by the Wolcott police with procedures for conducting vehicular pursuits. We conclude that the habeas court did not abuse its discretion in denying certification to appeal, and, therefore, we dismiss the petitioner's appeal.

The habeas court made the following findings of fact. The petitioner was the defendant in a criminal proceeding in which he was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (3), interfering with an officer in violation of General Statutes (Rev. to 1997) § 53a-167a, and two counts of risk of injury to a child in violation of General Statutes (Rev. to 1997) § 53-21. The charges arose from an incident in which the petitioner fled from the Waterbury police, who were attempting to serve him with a criminal warrant for his arrest. In the course of a high-speed vehicular pursuit, in which two small children, ages one and three, were in the vehicle driven by the petitioner, he collided with another motor vehicle on Woodtick Road

---

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 736 n.1, 930 A.2d 644 (2007).

in Wolcott. The collision forced the second vehicle off the road, causing it to strike a tree. As a result, a female passenger in the second vehicle suffered severe physical injuries.

The petitioner was arraigned on August 28, 1997. At the arraignment, and in all subsequent trial court proceedings, he was represented by attorney Jayne Kennedy of the Waterbury office of the public defender. The petitioner initially told Kennedy that he had not been present in the vehicle involved in the pursuit. He later told her that he was merely a passenger, first identifying his cousin, "Andre," and then identifying Gary Thomas as the driver. Finally, immediately before jury selection, the petitioner admitted that he, in fact, had been the driver of the vehicle. As a result of the petitioner's duplicity, much of Kennedy's pretrial investigation involved attempting to arrange an interview with Andre and to locate Thomas. Following a thorough investigation of the facts, Kennedy concluded that the state had assembled a strong body of evidence implicating the petitioner in the crimes, there being approximately nineteen witnesses prepared to testify against him. In Kennedy's professional opinion, the petitioner would likely have been convicted if the case had gone to trial.

The petitioner's potential exposure, if convicted on the original charges, was approximately forty years incarceration. The petitioner nevertheless rejected a pretrial offer of ten years imprisonment, to be served concurrently with the three year sentence that he then was serving. After the offer was withdrawn and a jury was selected, the petitioner attempted, without success, to dismiss his counsel immediately prior to the start of the evidence. He then changed his mind and agreed to a second pretrial offer of twelve years imprisonment, to be served consecutively to his existing sentence. On February 1, 1999, the trial court accepted the petition-

er's plea of guilty under the *Alford* doctrine to one count of assault in the first degree and two counts of risk of injury to a child. On March 19, 1999, the trial court sentenced the petitioner to a term of imprisonment of twelve years, in accordance with the pretrial agreement. The petitioner did not ask to withdraw his plea at any time prior to the imposition of his sentence.

The petitioner filed a pro se petition for a writ of habeas corpus on November 13, 2002, and a second amended petition on September 10, 2004, seeking to withdraw his guilty plea on the ground that his trial counsel had failed to investigate and advise him adequately regarding the consequences of his plea, thus rendering ineffective assistance of counsel in violation of his state and federal constitutional rights. On April 19, 2004, the respondent, the commissioner of correction, filed a return asserting the affirmative defense of procedural default on the ground that the petitioner had failed to raise his claim at the sentencing proceeding,[2] following sentencing pursuant to Practice Book § 43-22,[3] or on direct appeal. The respondent also argued that the petitioner could not establish the cause and prejudice[4]

---

[2] Practice Book § 39-26 provides in relevant part: "A defendant may withdraw his or her plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. . . ."

Practice Book § 39-27 provides in relevant part: "The grounds for allowing the defendant to withdraw his or her plea of guilty after acceptance [include] . . .

"(4) The plea resulted from the denial of effective assistance of counsel . . . ."

[3] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[4] In *Wainwright* v. *Sykes*, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), the United States Supreme Court adopted a new standard for federal habeas review requiring that, "[i]n a collateral attack upon a conviction, the petitioner must make not only a showing of cause for [his] failure to challenge the [alleged impropriety], but also a showing of actual prejudice." (Internal

required to excuse the procedural default and to permit review of his claim for the first time in the habeas proceeding.

The habeas court held hearings on the second amended petition on January 21 and January 31, 2005, during which several witnesses testified and various documentary material was entered into evidence. The court did not allow the petitioner to introduce the testimony of retired police officer John Mott regarding the reasons why flashing lights and sirens are usually employed in police pursuits and the likely effect on the petitioner of their absence in the present case. According to the petitioner, Mott would have testified that the police have a duty to employ lights and sirens to minimize harm to the public and that the failure to do so in the present case might have tended to prove that police negligence contributed to the Woodtick Road accident because the second vehicle had no warning of the approaching pursuit.

On February 3, 2005, the court rendered judgment denying the petition. In its memorandum of decision, the court analyzed and rejected the petitioner's ineffective assistance of counsel claim on its merits after applying the two part test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as modified for guilty plea cases by *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). See part I of this opinion. The court therefore concluded that the petitioner "enjoyed the representation of competent counsel and . . . found that his plea of guilty [was] knowing, intelligent and voluntary." The court did not address the procedural default issue. On February 8, 2005, the petitioner

quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 412, 589 A.2d 1214 (1991). We subsequently adopted this standard for purposes of state habeas proceedings in *Johnson* v. *Commissioner of Correction*, supra, 419.

filed a petition for certification to appeal from the habeas court's judgment. The habeas court denied the petition. On April 18, 2005, the petitioner appealed to the Appellate Court.

On appeal to the Appellate Court, the petitioner claimed that the habeas court (1) abused its discretion in denying certification to appeal from the habeas court's judgment, (2) improperly concluded that he had received effective assistance from his trial counsel in connection with his *Alford* plea, and (3) abused its discretion in declining to admit the testimony of Mott on relevancy grounds because Mott's testimony that the police had not followed the proper procedures in conducting the vehicular pursuit would have weakened the state's case against the petitioner.

The respondent countered that, because the petitioner had failed to show cause and prejudice for failing to challenge his *Alford* plea in the trial court or on direct appeal, his claim of ineffective assistance of counsel in connection with that plea should not be reviewed by the Appellate Court. The respondent also argued that the petitioner's trial counsel had not been ineffective in failing to develop information about possible police negligence stemming from the failure to use a siren and flashing lights during the pursuit because such information could not have diminished or eliminated the petitioner's criminal culpability. The respondent finally argued that the habeas court had not abused its discretion in excluding Mott's testimony. The petitioner responded that the cause and prejudice requirement in habeas cases does not apply to claims of ineffective assistance of counsel. He further contended that Mott's testimony should not have been excluded because it would have supported his claim that he did not have the requisite criminal intent to support a conviction of the crimes with which he had been charged.

Following oral argument on January 16, 2007, the Appellate Court filed a request to transfer the appeal to this court pursuant to Practice Book § 65-2.[5] The court explained that the claim of procedural default required review by this court because there were two conflicting lines of cases dealing with procedural default, and, therefore, a decision by this court was necessary to resolve the conflict. We subsequently granted the request to transfer and the joint motion of the parties to file simultaneous supplemental briefs on the matter.

Our standard of review for habeas claims is well established. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion." *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). A petitioner may establish an abuse of discretion by demonstrating "that the issues are debatable among jurists of reason . . . [the] court *could* resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further."[6] (Emphasis in original; internal quotation marks omitted.) Id., 616, quoting *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). The required determination may be made on the basis of the record before the habeas court and the applicable legal principles. See *Simms*

---

[5] Practice Book § 65-2 provides in relevant part: "If, at any time before the final determination of an appeal, the appellate court is of the opinion that the appeal is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a motion to transfer and shall promptly decide whether to transfer the case to itself."

[6] This is the same burden that must be satisfied when a habeas petitioner is required to make a substantial showing that he has been denied a federal constitutional right for the purpose of obtaining a certificate of probable cause to appeal in federal court. See *Simms* v. *Warden*, supra, 230 Conn. 616, citing *Lozada* v. *Deeds*, 498 U.S. 430, 431, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991).

v. *Warden,* supra, 617. "If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." Id., 612.

I

We first address the petitioner's claim that the habeas court abused its discretion in denying certification to appeal because the court improperly concluded that he failed to demonstrate that his trial counsel provided him with ineffective assistance. The petitioner maintains that his trial counsel was ineffective because she failed to investigate and advise him adequately in connection with his plea. The petitioner specifically claims that his trial counsel did not attempt to determine whether the police had complied with procedures regulating high-speed vehicular pursuits, obtain photographs of the accident scene, speak with the police officers involved in the pursuit, engage the services of an accident reconstruction expert, inspect either of the vehicles involved in the collision or interview the driver of the other vehicle. The petitioner thus claims that his trial counsel did not learn that the police officer's vehicle was traveling in excess of fifty miles per hour and that Woodtick Road was a two lane country road with many hills and curves. She also did not learn that no one present at the scene heard any sirens or saw any lights emanating from the police cruiser until after the collision had occurred, that the petitioner attempted to drive his vehicle between a construction crew and the other vehicle, and that the other vehicle might have pulled over to the side of the road if its driver had heard a siren and seen flashing lights. The petitioner contends that, if trial counsel had obtained this information and presented it to the state, he might have been able to obtain a more favorable plea agreement because a jury reasonably could have concluded that the petitioner's actions, although reckless, did not create a risk of death

and were not undertaken with the intention of causing serious physical injury to another person.

The respondent replies that the trial court did not abuse its discretion and that the performance of the petitioner's trial counsel was not deficient because the evidence established that the petitioner's chances of prevailing at trial were minimal.[7] The respondent argues that the petitioner's trial counsel reasonably advised the petitioner to take the offer of ten years incarceration and the subsequent offer of twelve years incarceration, both of which were substantially less than the maximum sentence that he could have received if his case had gone to trial. The respondent asserts, therefore, that the circumstances that the petitioner's trial counsel allegedly failed to investigate would not have lessened his criminal liability because, even if some degree of negligence by the police during the vehicular pursuit had been demonstrated, it would not have risen to the level of an intervening cause and relieved the petitioner of liability for his own actions, which were the proximate cause of the collision. We agree with the respondent.

The following facts are relevant to our resolution of this issue. At the habeas hearings, numerous witnesses testified, including the petitioner and his trial counsel. In her testimony, trial counsel admitted that she did not investigate whether the Wolcott police officer who drove the cruiser had complied with the procedures for high-speed vehicular pursuits. She also did not recall

---

[7] The respondent argues that the evidence established that the petitioner was the driver of the car, drove recklessly in an attempt to evade the police, caused a serious motor vehicle accident resulting in serious injuries to a passenger in the other vehicle and had two small unrestrained children in his vehicle. The respondent also argues that the petitioner's chances of prevailing at trial were minimal because he had no defense to the criminal charges to which he ultimately pleaded guilty under the *Alford* doctrine and because his criminal felony record would have been admissible for impeachment purposes if he had testified at trial.

whether she had attempted to obtain any photographs of the accident scene, did not believe that she had spoken with any of the police officers involved in the pursuit, did not engage the services of an accident reconstruction expert, did not visit the site of the collision, did not inspect the vehicles involved in the collision and did not interview the driver of the other vehicle involved in the accident.

Counsel also testified, however, that she had read the police reports and reviewed the statements of all of the witnesses. She also had spoken with the petitioner on seven to twelve occasions during the time that she represented him and believed that she had given him copies of the police reports and other documents that she had obtained. She stated that she had reviewed all of the evidence and discussed it with the petitioner, who struck her as intelligent, appeared to understand her and did not seem to be under the influence of drugs or alcohol. In addition, she had filed two motions in limine, a motion to preclude evidence, a motion to dismiss, a motion for a bill of particulars and several discovery requests in an effort to minimize the amount of evidence that the state would be able to present at trial.

The petitioner's initial defense was that he had not been in the vehicle. He then admitted that he was in the vehicle but was not the driver. The petitioner gave his trial counsel information about other people who had been in the vehicle and asked her to follow up on his statements that he had not been the driver or had not been in the vehicle. His trial counsel thus spent considerable time investigating the petitioner's claims and attempting to gather evidence for a defense of misidentification. In fact, she spent nearly one year, without success, searching for witnesses who could support a defense that the petitioner had not been in the vehicle. Moreover, members of the construction crew she had

contacted to verify the petitioner's defense told her that the person who had emerged and fled from the driver's side of the vehicle that caused the accident had the same build and was wearing the same clothing as the man later apprehended by the police, who was the petitioner. It was not until less than one week before trial, approximately sixteen months after his trial counsel had been appointed to represent him, that the petitioner admitted that he had been the driver of the vehicle.

Trial counsel also testified that, although she had not attempted to determine whether the Wolcott police had complied with town procedures for high-speed vehicular pursuits, she did not see how any negligence on the part of the police could relieve the petitioner of criminal liability for his own acts or omissions. Furthermore, in light of the petitioner's earlier statement that he had not been the driver of the vehicle, it did not make any difference whether the police officer driving the cruiser had activated its siren or flashing lights. She explained that she had not contacted the occupants of the other vehicle because she doubted that they would be able to offer any useful information in light of their serious injuries and the way they had been removed from the vehicle.

Finally, trial counsel testified that, when plea negotiations began within one month of the petitioner's arraignment, she explained the advantages and disadvantages of going to trial and advised him to take the ten year offer. Her advice was based on the fact that she could not place the petitioner outside the scene of the crime, could not find evidence supporting an alibi and could not dispute evidence that he was the driver of the vehicle, that children were in the vehicle and that the vehicle had been implicated in an accident that had resulted in serious injuries to another person. In addition, she did not find anything to corroborate his claim that he had not been the driver of the vehicle. She then

explained that the petitioner, nevertheless, had decided that he wanted to go to trial and that, only after jury selection was completed, did he decide to enter a plea and accept the state's offer of twelve years incarceration.

In its memorandum of decision, the habeas court appeared to agree with trial counsel's opinion. The court determined that, although it might be arguable that she should have investigated the actions of the police, the court was "hard pressed to see any scenario by which that negligence could have operated to relieve the petitioner of criminal liability for his grossly reckless conduct of speeding down a twisting country road with two children in his car, colliding with another vehicle and causing serious injury to the occupants. The theory of the petitioner is along the lines that the police should have had lights flashing and siren blaring during the chase and that this would have provided sufficient warning to [the driver of the other vehicle] to get out of the way of the petitioner's car [which] was attempting to evade the police. This argument approaches the absurd and is rejected . . . . While it may *potentially* be an issue that could be raised in any civil lawsuit between the [occupants of the other vehicle], the petitioner and the town of Wolcott, it has no place in the criminal case involving the criminal conduct of the petitioner." (Emphasis in original.)

The standard of appellate review of habeas corpus proceedings is well settled. "The underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. So-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations, are not facts in this sense. . . . Whether the representation a defendant received at trial was constitutionally

inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 152–53, 662 A.2d 718 (1995).

As we previously stated, the governing legal principles in cases involving claims of ineffective assistance of counsel arising in connection with guilty pleas are set forth in *Strickland* and *Hill*. "In *Strickland*, which applies to claims of ineffective assistance during criminal proceedings generally, the United States Supreme Court determined that the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. *Strickland* v. *Washington*, supra, 466 U.S. 688, 694. The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment. Id., 687. Under the test in *Hill*, in which the United States Supreme Court modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial. *Hill* v. *Lockhart*, supra, 474 U.S. 59." (Emphasis in original; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575–76, 941 A.2d 248 (2008).

In applying these principles in the present context, we are mindful that, "although it is incumbent on a trial counsel to conduct a prompt investigation of the case

and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction . . . counsel need not track down each and every lead or personally investigate every evidentiary possibility. . . . In a habeas corpus proceeding, the petitioner's burden of proving that a fundamental unfairness had been done is not met by speculation . . . but by demonstrable realities. . . . One cannot successfully attack, with the advantage of hindsight, a trial counsel's trial choices and strategies that otherwise constitutionally comport with the standards of competence." (Internal quotation marks omitted.) Id., 583–84, quoting *Edwards* v. *Commissioner of Correction*, 87 Conn. App. 517, 525–26, 865 A.2d 1231 (2005).

We conclude that the habeas court did not abuse its discretion in denying certification to appeal, insofar as its denial related to the petitioner's claim of ineffective assistance of counsel. Considering the record in light of *Strickland* and *Hill*, we cannot conclude that the issue in this case is debatable among jurists of reason, could have been resolved in a different manner or raises any question deserving of further examination. See *Simms* v. *Warden*, supra, 230 Conn. 616. The record does not reveal any errors made by the petitioner's trial counsel that deprived him of his right to effective representation. Because the petitioner did not admit until just before jury selection that he had been the driver of the vehicle, his claim of ineffective assistance for failure to investigate is unpersuasive. If the petitioner had not been the driver of the vehicle involved in the pursuit, as he had claimed during most of the pretrial investigation, he could not have been held responsible for the pursuit and its consequences. Accordingly, a failure by the driver of the police cruiser to activate the vehicle's siren and flashing lights would not have been relevant to the petitioner's case. Moreover, his trial counsel's attempt to develop a defense

relating to misidentification was reasonable in light of the petitioner's insistence that he had not been the driver of the vehicle. We therefore conclude that the habeas court did not abuse its discretion in denying his petition for certification to appeal on that ground.[8]

## II

We next consider the petitioner's claim that the habeas court abused its discretion when it precluded Mott's testimony as to why sirens and flashing lights are employed in police pursuits and the possible effect of the police officer's failure to do so in the present case. The petitioner claims that Mott's testimony was relevant and material to his case because it would have supported the petitioner's argument that the accident might have been less harmful, or avoided altogether, if

---

[8] We do not consider the respondent's affirmative defense that the petitioner's ineffective assistance of counsel claim was in procedural default and that he did not show the cause and prejudice required to obtain habeas review. The parties did not raise this issue at the habeas hearing, and the habeas court did not make any findings of fact or rulings on the issue. "This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled [on] and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 285 Conn. 580; see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). We nevertheless observe that, even if the habeas court had ruled on the procedural default issue, we would be guided by the standard articulated in *Johnson*. In that case, we concluded that the court should follow the two-pronged test set forth in *Strickland* v. *Washington*, supra, 466 U.S. 687–88, as modified for guilty plea cases by *Hill* v. *Lockhart*, supra, 474 U.S. 59, in deciding whether a petitioner who is in procedural default because he has not moved to withdraw his guilty plea or challenged his plea by filing a direct appeal has shown the cause and prejudice required to obtain habeas review of a claim alleging ineffective assistance of counsel pursuant to Practice Book § 39-27 (4). *Johnson* v. *Commissioner of Correction*, supra, 571–72, citing *Valeriano* v. *Bronson*, 209 Conn. 75, 83–84, 546 A.2d 1380 (1988). Thus, because that standard is the same standard that we have applied in reviewing the petitioner's habeas claim on its merits, it is immaterial that we do not specifically address the respondent's affirmative defense.

the police had followed procedures and activated the cruiser's siren and flashing lights during the pursuit, thereby warning the other vehicle's driver of the approaching chase and giving him time to pull over.

The respondent argues that the habeas court properly excluded Mott's testimony because police negligence, even if found by the court, could not have diminished or eliminated the petitioner's criminal culpability for the reckless driving that was the proximate cause of the accident and the injuries. Moreover, even if the habeas court should have permitted Mott to testify, its failure to do so was harmless. The petitioner adduced evidence during the hearing suggesting that sirens and flashing lights were not activated until after the accident had occurred, or only intermittently before the crash, expert testimony indicated that the officer pursuing the petitioner was traveling in excess of fifty miles per hour in a speed zone of approximately twenty-five to thirty-five miles per hour, and the petitioner repeatedly argued before the habeas court that these factors established police negligence in conducting the pursuit. Accordingly, the respondent asserts that Mott's testimony was unnecessary to support an inference of police negligence because the petitioner had succeeded in presenting other evidence that would have supported the same inference. We agree with the respondent that the habeas court properly excluded Mott's testimony as irrelevant for purposes of determining the petitioner's criminal culpability.

On the second day of the hearing, the petitioner attempted to offer Mott's testimony that it is not only standard practice, but required police procedure, for police cruisers involved in vehicular pursuits to activate their sirens and flashing lights so as to warn the public and to avoid undue harm to civilians. The petitioner contended that whether the police had followed this procedure was part of the totality of circumstances that

the court should have considered in deciding his guilt or innocence of assault in the first degree, which required a showing that he had demonstrated an extreme indifference to human life. The respondent argued that the proffered testimony should not be permitted because it was not relevant and because the court had indicated with respect to previous witnesses that it would not permit testimony regarding police negligence. The habeas court ultimately excluded the proposed testimony on the ground that it was irrelevant. The court observed that police negligence in conducting the pursuit might be relevant in a civil lawsuit brought by the injured occupants of the other vehicle against the petitioner and the town of Wolcott but that it had no connection with what the petitioner did or did not do in his attempt to evade the police or with the determination of his criminal guilt.

In its memorandum of decision, the habeas court initially noted that the petitioner's claim of ineffective assistance of counsel rested principally on his assertion that his trial counsel had not presented evidence regarding the negligence of the Wolcott police. The court noted that the petitioner specifically had alleged that the police cruiser did not have its lights or siren on and that that this was a factor in causing the motor vehicle accident. As we noted in part I of this opinion, the court then fully considered and rejected this argument, stating that it had no place in the petitioner's criminal case.

The applicable standard of review for evidentiary challenges is well established. "Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor

of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *St. John,* 282 Conn. 260, 270, 919 A.2d 452 (2007).

We agree with the habeas court that Mott's testimony had no relevance to the petitioner's culpability in the criminal proceeding. Whether the police may have been negligent in conducting the vehicular pursuit had no bearing on the fact that the petitioner initiated the pursuit by fleeing in his vehicle when the Waterbury police attempted to serve him with a criminal warrant for his arrest. The petitioner chose the route taken for the pursuit, the speed at which the pursuit was conducted and the action ultimately responsible for the collision, namely, an ill-advised attempt to drive between a construction crew and another vehicle when there was no room on the roadway to do so. We therefore conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal because the evidentiary issue is not debatable among jurists of reason, the court could not have resolved the issue in a different manner and the question is not deserving of further review. See *Simms* v. *Warden,* supra, 230 Conn. 616.

The appeal is dismissed.

In this opinion the other justices concurred.