******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MATTHEW STEVEN JOHNSON *v.* COMMISSIONER
OF CORRECTION
(AC 34989)

Gruendel, Beach and Lavery, Js.

*Argued October 8, 2014—officially released January 6, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Newson, J.)

*David B. Rozwaski*, assigned counsel, for the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's

attorney, and *Erika L. Brookman,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. Following a grant of certification to appeal by the habeas court, the petitioner, Matthew Steven Johnson, appeals from the court's judgment denying his amended petition for a writ of habeas corpus. In this appeal, the petitioner claims that the habeas court: (1) erred in concluding that his trial counsel, George Flores and James McKay, did not render ineffective assistance; and (2) abused its discretion by excluding from the habeas trial the testimony of a former juror who had deliberated and joined in the verdict finding him guilty. We disagree and, accordingly, affirm the judgment of the habeas court.

The petitioner was charged with, and convicted of, three counts of murder in violation of General Statutes § 53a-54a. *State* v. *Johnson*, 289 Conn. 437, 438, 958 A.2d 713 (2008), overruled on other grounds by *State* v. *Payne*, 303 Conn. 538, 34 A.3d 370 (2012). His convictions were upheld on direct appeal. Id., 439.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. During a fifteen month period, the bodies of three female murder victims separately were discovered in Hartford in close proximity to one another. Id., 439–42. The victims' bodies were discovered in similar states of undress. Id. The victims all belonged to racial or ethnic minority groups,[1] were in their thirties, were drug users, had arrest records for prostitution, and had died from blunt force trauma to the head and neck. Id., 439–43. Critically, DNA[2] matching the petitioner's profile was found on the bodies of all three victims. Id. The petitioner was arrested and charged with all three murders. Id., 444. Over the objection of the petitioner's counsel, the three murder charges were consolidated for trial. Id., 444–45. Henry Lee, the state's crime scene reconstruction expert, testified at the petitioner's criminal trial that, in his opinion, the murders were "serial killings," as that term is defined in forensic science, because each crime scene shared significant similarities, one of which was the presence of the defendant's DNA, and because the murders were separated by a cooling off period. Id., 445–48.

Additionally, during the evidence phase of the petitioner's criminal trial, a juror provided to the court a confidential note expressing concern about his ability to continue serving on the jury because, to his knowledge, the only DNA database maintained in Connecticut was reserved for sex offenders.[3] Upon receipt of his note, the court called the juror into the courtroom, and instructed the juror that merely having one's profile in the state's DNA database does not indicate a prior criminal conviction. In response to the court's instruction, as well as subsequent voir dire by the petitioner's trial counsel, the juror represented that his misunder-

standing had been corrected, and that he had not shared his incorrect assumption with other jurors. The petitioner's trial attorneys stated that they were satisfied with the juror's responses, and, thus, they did not request that he be excused. At the habeas trial, the court, *Newson, J.*, granted the motion in limine filed by the respondent, the Commissioner of Correction, to preclude the juror's testimony over the petitioner's objection. The habeas court ultimately denied the petition for a writ of habeas corpus, but granted the petition for certification to appeal. This appeal followed.

I

The petitioner claims that the habeas court erred in concluding that his trial attorneys were not ineffective for (1) failing to object to certain testimony offered by Lee, and (2) failing to question sufficiently and to seek removal of the juror. We disagree.

We begin by setting forth our standard of review. "As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong . . . ." (Citation omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 703–704, 23 A.3d 682 (2011).

A

The petitioner first claims that the habeas court erred in concluding that counsel's performance was not deficient when they failed to make a specific objection, under § 7.3 of the Connecticut Code of Evidence,[4] to Lee's characterization of the three homicides as "serial killings" with the petitioner's DNA as a common denominator at the crime scenes. We are not persuaded.

The record confirms that trial counsel attempted to limit and outright to preclude Lee's testimony through multiple avenues.[5] "Competent representation is not to be equated with perfection. The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." (Internal quotation marks omitted.) *White* v. *Commissioner of Correction*, 145 Conn. App. 834, 840–41, 77 A.3d 832, cert. denied, 310

Conn. 947, 80 A.3d 906 (2013). In light of counsel's persistent attempts to prevent Lee's testimony from getting before the jury, or to limit such testimony, we agree with the habeas court that counsel's performance was not rendered deficient merely because they did not cite § 7.3 of the Connecticut Code of Evidence as an additional ground for objection.[6] Motions based on very similar grounds had been rejected by the trial court.

B

The petitioner additionally claims that the habeas court improperly determined that counsel's assistance was not ineffective in failing to question the juror adequately and then seek his removal. We disagree.

The record is devoid of any implication that the juror did not follow the court's instruction that having a profile in a DNA registry did not necessarily indicate a prior criminal conviction. Moreover, the juror responded to questioning by the court and defense counsel that his misunderstanding had been corrected. "In the absence of a showing that the jury failed or declined to follow the court's instructions, we presume that it heeded them." *State* v. *Reynolds*, 264 Conn. 1, 131, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). Consequently, the record supports the habeas court's conclusion that the petitioner was neither prejudiced, nor was provided deficient performance, by his counsel's failure to seek removal of the juror.

II

Finally, the petitioner asserts that the habeas court erred in granting the respondent's motion in limine, which precluded the juror from testifying at the habeas trial.[7] This claim is without merit.

In the present case, there is no allegation of juror misconduct. The petitioner objected to the respondent's motion in limine on the ground that he sought to question "whether [the juror] was able to follow the court's instruction after he raised the issue of the petitioner's inclusion in a sexual offender database." The petitioner essentially represented to the court that he wanted to question the juror about the mental processes by which the verdict was determined. Such an inquiry is impermissible under our law. See *Connecticut Light & Power Co.* v. *Gilmore*, 289 Conn. 88, 106, 956 A.2d 1145 (2008) ("the rule that prohibits the examination of the jurors' mental process excludes, as immaterial, evidence . . . as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict" [internal quotation marks omitted]); see also Practice Book § 16-34 ("[u]pon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror nor any evidence concerning mental processes by which the verdict was determined"). Conse-

quently, the habeas court did not abuse its discretion in granting the respondent's motion in limine.

The judgment is affirmed.

[1] Two of the victims were Hispanic and one was African-American. See *State* v. *Johnson*, supra, 289 Conn. 439–442.

[2] "DNA is the abbreviation for deoxyribonucleic acid." *State* v. *Morales*, 232 Conn. 707, 713 n.8, 657 A.2d 585 (1995).

[3] The note provided in relevant part: "I am writing to express my concern regarding testimony we heard last week. In the course of testimony, a witness testified to matching an anonymous DNA sample entry in a State of Connecticut (official) database. To my knowledge, the only DNA database regularly maintained and searched in the State of Connecticut is that of convicted sexual offenders.

"Given that this information has not been shared with the jury, I am concerned that my knowledge of this database's origin may be a problem. It is not my intent to avoid this episode of jury duty, however, I do not want to be a cause for a mistrial or some other dramatic outcome. I am writing to seek further direction in this matter. . . ."

[4] Section 7.3 of the Connecticut Code of Evidence provides in relevant part: "(a) General rule. Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that, other than as provided in subsection (b), an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue. . . ."

[5] The petitioner's trial counsel first unsuccessfully objected to the state's motion to consolidate all three cases. See *State* v. *Johnson*, supra, 289 Conn. 444–45. Next, counsel unsuccessfully moved for a court order requiring that Lee provide a supplemental report with additional factual bases for his classification of the three killings as "serial murders" to allow them to respond properly to his testimony, or, in the alternative, to have Lee's testimony wholly excluded from trial. Subsequently, counsel filed a motion in limine seeking to preclude Lee from characterizing the homicides as "serial killings." That motion was denied as well. Finally, defense counsel objected after Lee testified that the cases were "consistent with a serial killer." The court overruled that objection. See *State* v. *Johnson*, supra, 448.

[6] We express no opinion as to whether Lee, in fact, did offer an opinion as to an ultimate issue.

[7] "The applicable standard of review for evidentiary challenges is well established. Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 602–603, 940 A.2d 789 (2008).